# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

A LTS DVR HOME SURVEILLANCE DEVICE MODEL LTN8704Q-P4N, WITH SERIAL NUMBER 8402109633X00191 PROCESSED AS EXHIBIT N-5

)
)
)
)
)
)
)

Case No. 1:24-MJ- **236**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A attached and incorporated herein.

located in the _____Eastern_____ District of _____Tennessee_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1) (C), & 846. | Distribution / conspiracy to distribute a controlled substance; |

The application is based on these facts:

See attached Affidavit of DEA Special Agent Nathan F. Mills

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nathan F. Mills, DEA Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____09/09/2024_____

_____
*Judge's signature*

City and state: Chattanooga, Tennessee

Hon. Christopher H. Steger, U.S. Magistrate Judge
_____
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE SEARCH OF A
LTS DVR HOME SURVEILLANCE
DEVICE MODEL LTN8704Q-P4N, WITH
SERIAL NUMBER 8402109633X00191          Case No. 1:24-mj- 236
PROCESSED AS EXHIBIT N-5 IN DEA
CASE KX-22-0024 AND CURRENTLY
LOCATED AT THE DEA
CHATTANOOGA RESIDENT OFFICE AT
4510 TURNTABLE ROAD,
CHATTANOOGA, TENNESSEE

## ATTACHMENT A

The property is a LTS DVR home surveillance device, model LTN8704Q-P4N, with serial number 8402109633X00191 [designated and referenced hereinafter and in the attached Affidavit as "**The Device**"]. **The Device** is listed as Exhibit N-5 in DEA Chattanooga Case KX-22-0024.

**The Device** belongs to Tasha JACKSON and is located at the DEA Chattanooga Resident Office, 4510 Turntable Road, Chattanooga, Tennessee.

The warrant authorizes the forensic examination of **The Device** for the purpose of identifying the electronically stored information described in Attachment B.

1

IN THE MATTER OF THE SEARCH OF A
LTS DVR HOME SURVEILLANCE
DEVICE MODEL LTN8704Q-P4N, WITH
SERIAL NUMBER 8402109633X00191
PROCESSED AS EXHIBIT N-5 IN DEA
CASE KX-22-0024 AND CURRENTLY
LOCATED AT THE DEA
CHATTANOOGA RESIDENT OFFICE AT
4510 TURNTABLE ROAD,
CHATTANOOGA, TENNESSEE

Case No. 1:24-MJ-236

## ATTACHMENT B

1.　　All records on **The Device** described in Attachment A that relate to violations of Title 21 U.S.C. § 841(a)(1) and (b)(1)(C) and Title 21 U.S.C. § 846 and involve Tasha JACKSON since July 2022, including:

　　a)　Digital video and/or audio of JACKSON and others delivering/receiving parcels at the residence at 2004 Anderson Avenue, Chattanooga, Tennessee.

2.　　Evidence of user attribution showing who used or owned **The Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.　　Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.　　As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or

1

stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE SEARCH OF
A LTS DVR HOME SURVEILLANCE
DEVICE MODEL LTN8704Q-P4N, WITH
SERIAL NUMBER 8402109633X00191
PROCESSED AS EXHIBIT N-5 IN DEA
CASE KX-22-0024 AND CURRENTLY
LOCATED AT THE DEA
CHATTANOOGA RESIDENT OFFICE
AT 4510 TURNTABLE ROAD,
CHATTANOOGA, TENNESSEE

Case No. 1:24-mj- 236

AFFIDAVIT IN SUPPORT OF
APPLICATION UNDER RULE 41 FOR
WARRANT TO SEARCH AND SEIZE

I, Special Agent Nathan Mills, being first duly sworn, hereby depose and state as follows:

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for search warrant authorizing the examination of property— an electronic

device—which is currently in law enforcement possession, and the extraction from that property

of electronically stored information described in Attachment B.

2.      I am a Special Agent of the Department of Justice, Drug Enforcement

Administration (DEA). As such, I am "an investigative or law enforcement officer of the United

States," as defined within Section 2510(7) of Title 18, United States Code, and empowered by law

to conduct investigations of, and to make arrests for, offenses enumerated in Title 21 of the United

States Code. I have been employed as a Special Agent with DEA since August 2011. In May

2011, I completed the basic agent training held at the DEA Training Academy in Quantico,

Virginia. While at the academy, I received extensive instruction and training on surveillance

Page **1** of **13**

techniques, arrest and control techniques, interview and interrogation techniques, report writing, confidential source management, firearms proficiency, and drug identification.

3.    After completing basic agent training, I was assigned to the Tucson District Office of the DEA's Phoenix Field Division, where I served until January 2017. In January 2017, I transferred to the Louisville Field Division Office in Louisville, Kentucky, where I served for almost three years. In December 2019, I transferred to my current assignment at the Chattanooga Resident Office of the DEA's Louisville Field Division.

4.    During my employment as a Special Agent with DEA, I have personally been involved in several investigations related to drug trafficking. I have also participated in interviews of suspects involved in the possession and sale of illegal drugs. I regularly use confidential sources and conduct surveillance of persons involved in the possession and distribution of controlled substances. Further, I have participated in the execution of arrest and search warrants for persons and places connected with the possession, manufacture, and distribution of controlled substances to include cocaine, methamphetamine, marijuana, synthetic cannabinoids (Spice), heroin, and fentanyl.

5.    While participating in the debriefing of defendants, witnesses, and informants, I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. Additionally, throughout my career, I have also learned through discussion with other law enforcement investigators in regard to these matters.

6.    Based on my training and experience, as well as my knowledge obtained through conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, their use of

cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity. Based upon my training, experience, and participation in investigations involving the distribution of narcotics, I know that individuals engaged in or facilitating illegal drug trafficking will often utilize video surveillance equipment for various purposes, to include monitoring their customers, their package deliveries to include package deliveries of illegal narcotics, and law enforcement presence and security. I also know that these surveillance systems are often monitored directly through a hard connection on site, but can also often be monitored remotely utilizing computers or cellular devices that have web browsing capabilities or access to the applicable security/surveillance system software/applications.

7.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.    The property to be searched is as follows:

a)    An LTS DVR Model LTN8704Q-P4N with serial number 8402109633X00191 [hereinafter "**The Device**"]. **The Device** is listed as Exhibit N-5 in DEA Chattanooga Case KX-22-0024 and is currently located within the non-drug evidence vault at the DEA Chattanooga Resident Office at 4510 Turntable Road, Chattanooga, Tennessee. The applied-for warrant would authorize the forensic examination of **The Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9.    On January 4, 2023, the Honorable Charles Paty, Hamilton County Magistrate Judge of the General Sessions Criminal Court of the state of Tennessee authorized a state search

Case 1:24-mj-00236-CHS    Document 3    Filed 09/10/24    Page 7 of 20    PageID #: 10

warrant for the following UPS parcel bearing tracking number 1ZW68Y490224359739, that at the time of the search warrant, was in the custody of the UPS Shipping Center at 4300 Founders Way, Chattanooga, Tennessee 37416:



10.     On January 4, 2023, Tennessee Bureau of Investigation (TBI) Special Agent Lauren Moon executed the state search warrant on the aforementioned package and subsequently located three plastic, vacuum sealed bags containing approximately 2,800 suspected counterfeit pills, where she then secured the evidence at the TBI office in Chattanooga, Tennessee.



11.    Based on a review of available databases, there was no "Brat Eahernan" associated with 2004 Anderson Avenue, Chattanooga, TN 37404. Furthermore, TBI SA Moon conducted a Tennessee statewide query of the subject name "Brat Eahernan" and found no one with a Tennessee state-issued identification under that name. Based on training and experience, investigators know it is common for senders and recipients of illegal drugs and their proceeds to commonly alter their names, utilize partial names, or utilize fictitious names on UPS parcels to hinder law enforcement from identifying the subjects involved in illegal drug trafficking and the trafficking of its proceeds.

12.    TBI SA Moon was able to identify the address as associated with Tasha JACKSON with a listed date of birth of 2/22/1991. Prior law enforcement reports show JACKSON was at the scene of a narcotics search warrant executed by the Chattanooga Police Department (CPD) in March 2022, in which marijuana and a firearm were seized by law enforcement [CPD Complaint #22-027545]. Additionally, JACKSON was found to have a criminal history involving drugs;

Page **5** of **13**

specifically, she was arrested by Hamilton County on July 22, 2013, for Possession of Marijuana, where her court case resulted in Diversion with a judgment of 6 months in the County Workhouse.

13.     A law enforcement database query indicated that on July 31, 2022, Tasha JACKSON transferred money via MoneyGram to Karla Veronica LEYVA in the area of Mexico City, Distrito Federal, Mexico.  During the MoneyGram wire transfer, JACKSON listed her address as 2004 Anderson Avenue, Chattanooga, TN with a phone number of (423)240-6690. JACKSON's Tennessee issued driver license also listed 2004 Anderson Avenue, Chattanooga, TN.     Additionally, JACKSON also listed the (423)240-6690 phone number with Securus Technologies, which is the jail call system utilized by the Hamilton County Sheriff's Office – Silverdale Detention Center.

14.     Furthermore, a law enforcement de-confliction database query conducted on January 4, 2023, for phone number (423)240-6690 showed that the phone number was in direct contact with a phone number utilized by Montrel PRICE, a Chattanooga, Tennessee based fentanyl distributor.  The phone number for Montrel PRICE was entered into the de-confliction database on November 29, 2022.  This same de-confliction showed a second conflict, wherein Homeland Security Investigations (HSI) was listed as the investigative agency.  Follow-up with HSI on this second conflict indicated that HSI associated the (423)240-6690 phone number to JACKSON on a seizure of approximately 10,000 Oxycodone pills sent via UPS parcel from California and destined for 2004 Anderson Avenue, Chattanooga, TN during the month of March 2022.

15.     On January 5, 2023, Honorable Christopher H. Steger, United States Magistrate Judge for the Eastern District of Tennessee, signed an anticipatory search warrant 1:23-MJ-0003 authorizing the search of the residence at 2004 Anderson Avenue, Chattanooga, TN.  On the same date, personnel assigned to the DEA Chattanooga Resident Office and TBI conducted a controlled

delivery of the UPS parcel bearing tracking number 1ZW68Y490224359739 at 2004 Anderson Avenue, Chattanooga, TN. Later that same day, investigators observed JACKSON arrive at the residence with two juvenile females and move the UPS parcel from the front porch into the residence. Investigators executed the search warrant at the residence which resulted in the seizure of a SCCY CPX-2 9MM handgun, crack cocaine, and marijuana from a dresser located inside JACKSON's bedroom. A digital scale was also located on top of the same dresser within JACKSON's bedroom. Additionally, investigators seized **The Device**, which was located in the living room of the residence with several cameras located on the exterior of the residence.

16.     The investigation has shown that JACKSON used her cell phone with the number (423)240-6690 to access and monitor camera(s) that showed the front porch of her residence. JACKSON monitored the camera(s) to communicate with co-conspirator Melvin Lorenzo GREEN on November 2, 2022, about the delivery to and pickup from her front porch of at least one other package which is suspected to have contained illegal narcotics.

17.     The investigation has shown that on October 9, 2022, JACKSON used her cell phone with the number (423)240-6690 to communicate with another person about picking up money owed to GREEN. The investigation has shown that on October 13, 2022, JACKSON used her cell phone with the number (423)240-6690 to communicate with GREEN about the delivery and pickup of another package which is suspected to have contained illegal narcotics; this communication coincided with the shipment to JACKSON's residence of a suspicious package from San Mateo, California.

18.     The investigation has shown that United States Postal Service records indicate that on July 29, 2022, JACKSON received a suspicious package from Menlo Park, California.

19.     The DEA laboratory has confirmed that the UPS parcel bearing tracking number 1ZW68Y490224359739 contained 2,788 tablets and approximately 304.68 grams of fentanyl.

20.     This affidavit does not set forth all my knowledge about this investigation. It is submitted for the limited purpose of establishing probable cause to believe that a criminal offense has been committed and that execution of the search and seizure warrant for **The Device** will reveal evidence of a crime; contraband, fruits of a crime, or other evidence illegally possessed; and property designed for use, intended for use, or used in committing a crime by JACKSON and others operating in the Eastern District of Tennessee.

21.     **The Device** is currently in the lawful possession of DEA Chattanooga, and it came into the possession of DEA Chattanooga during the lawful execution of the search warrant at 2004 Anderson Avenue, Chattanooga, Tennessee on January 5, 2023. After **The Device** was seized, it was processed into DEA evidence and secured within the non-drug evidence vault at the DEA Chattanooga Resident Office at 4510 Turntable Road, Chattanooga, Tennessee. Therefore, while DEA Chattanooga might already have all necessary authority to examine **The Device**, I seek this search warrant out of an abundance of caution to be certain that an examination of **The Device** will comply with the Fourth Amendment and other applicable laws.

22.     **The Device** is currently stored within the non-drug evidence vault at the DEA Chattanooga Resident Office, at 4510 Turntable Road, Chattanooga, Tennessee. Through my training and experience, I know that **The Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when **The Device** first came into the possession of law enforcement.

## TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a) Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b) Removable storage media: Removable storage media include various types of flash memory cards or miniature hard drives.   This removable storage media can also store any digital data, to include but not limited to images, documents, contact lists, calendars, spreadsheets, and ledgers.   This digital data can usually be retrieved by connecting the removable storage medium to a computer or by connecting the removable storage medium to a separate reader.

c) Tablet:   A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.   Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11

"wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

24.     Based on my training, experience, and research, I know that **The Device** has capabilities that allow it to serve as a wireless telephone, a removable storage media, and/or a tablet. In my training and experience, examining digital data stored on electronic devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26.     There is probable cause to believe that things that were once stored on **The Device** may still be stored there, for at least the following reasons:

a) Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b) Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c) Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d) Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

27.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **The Device** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **The Device** because:

a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

Case 1:24-mj-00236-CHS    Document 3    Filed 09/10/24    Page 15 of 20    PageID #: 18

b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d) The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **The Device** consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium that might expose many parts of **The Device** to human inspection in order to determine whether it is evidence described by the warrant.

29.    *Manner of execution.*    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

Case 1:24-mj-00236-CHS    Document 3    Filed 09/10/24    Page 16 of 20    PageID #: 19

physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30.     Based on the facts detailed in this affidavit, I respectfully submit that there is probable cause to believe that evidence of the illegal distribution of narcotics in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(C) and Title 21 U.S.C. § 846 will be found in the search and collection of the data from **The Device**. Therefore, I request a search warrant authorizing the examination of **The Device** (further described in Attachment A) for the following digital evidence: (See Attachment B).

Respectfully submitted,

Nathan F. Mills, DEA Special Agent

Subscribed and sworn to before me on September _____, 2024

HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

IN THE MATTER OF THE SEARCH OF A
LTS DVR HOME SURVEILLANCE
DEVICE MODEL LTN8704Q-P4N, WITH
SERIAL NUMBER 8402109633X00191
PROCESSED AS EXHIBIT N-5 IN DEA
CASE KX-22-0024 AND CURRENTLY
LOCATED AT THE DEA
CHATTANOOGA RESIDENT OFFICE AT
4510 TURNTABLE ROAD,
CHATTANOOGA, TENNESSEE

Case No. 1:24-mj- 236

## ATTACHMENT A

The property is a LTS DVR home surveillance device, model LTN8704Q-P4N, with serial
number 8402109633X00191 [designated and referenced hereinafter and in the attached Affidavit
as "**The Device**"].  **The Device** is listed as Exhibit N-5 in DEA Chattanooga Case KX-22-0024.

**The Device** belongs to Tasha JACKSON and is located at the DEA Chattanooga Resident
Office, 4510 Turntable Road, Chattanooga, Tennessee.

The warrant authorizes the forensic examination of **The Device** for the purpose of identifying the
electronically stored information described in Attachment B.

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| IN THE MATTER OF THE SEARCH OF A LTS DVR HOME SURVEILLANCE DEVICE MODEL LTN8704Q-P4N, WITH SERIAL NUMBER 8402109633X00191 PROCESSED AS EXHIBIT N-5 IN DEA CASE KX-22-0024 AND CURRENTLY LOCATED AT THE DEA CHATTANOOGA RESIDENT OFFICE AT 4510 TURNTABLE ROAD, CHATTANOOGA, TENNESSEE | Case No. 1:24-MJ- 236 |
| --- | --- |

## ATTACHMENT B

1.      All records on **The Device** described in Attachment A that relate to violations of

Title 21 U.S.C. § 841(a)(1) and (b)(1)(C) and Title 21 U.S.C. § 846 and involve Tasha

JACKSON since July 2022, including:

a)   Digital video and/or audio of JACKSON and others delivering/receiving parcels

at the residence at 2004 Anderson Avenue, Chattanooga, Tennessee.

2.      Evidence of user attribution showing who used or owned **The Device** at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history.

3.      Records of Internet activity, including firewall logs, caches, browser history and

cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any

Internet search engine, and records of user-typed web addresses.

4.      As used above, the terms "records" and "information" include all of the foregoing

items of evidence in whatever form and by whatever means they may have been created or

1

stored, including any form of computer or electronic storage (such as flash memory or other

media that can store data) and any photographic form.

2